## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INTERNATIONAL LABOR RIGHTS FORUM d/b/a GLOBAL LABOR JUSTICE-INTERNATIONAL LABOR RIGHTS FORUM,<br><br>               Plaintiff,<br><br>      v.<br><br>BUMBLE BEE FOODS, LLC,<br><br>               Defendant. | **Civil Action No. 1:22-cv-01220**<br>Judge Dabney L. Friedrich |

## PLAINTIFF'S REPLY TO DEFENDANT'S MEMORANDUM OF LAW
## IN OPPOSITION TO REMAND

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................................ 1

ARGUMENT ...................................................................................................................... 3

I.   This Court Does Not Have Diversity or CAFA Jurisdiction Over This Action. ................ 3

A.   The Applicable Law Uniformly Holds That CPPA Cases of This Kind Are Subject to the Non-Aggregation Principle. .............................................................................. 4

B.   Bumble Bee's Costs of Compliance Are Speculative and Inflated. ............................. 7

II.   Courts in this District Have Uniformly and Routinely Rejected Defendant's CAFA Argument. .................................................................................................................... 13

III.   Plaintiff Is Entitled to Attorneys' Fees and Costs in Connection With Its Remand Motion. ....................................................................................................................... 17

CONCLUSION ................................................................................................................. 18

**TABLE OF AUTHORITIES**

**Cases**

*Addison Automatics, Inc. v. Hartford Cas. Ins. Co*., 731 F.3d 740 (7th Cir. 2013) .................... 15

*Animal Legal Def. Fund v. Hormel Foods Corp.,* 249 F. Supp. 3d 53 (D.D.C. 2017) (Kollar-
Kotelly, J.) .......................................................................................................... 5, 7, 14

*Animal Legal Def. Fund v. Hormel,* 258 A.3d 174 (D.C. 2021) ................................................ 13

*Beyond Pesticides v. Exxon Mobil Corp.,* No. 20-cv-1815 (TJK), 2021 U.S. Dist. LEXIS 53032,
(D.D.C. Mar. 22, 2021) ............................................................................................. 5, 7

*Breathe DC v. Santa Fe Nat. Tobacco Co.*, 232 F. Supp. 3d 163 (D.D.C. 2017) (Huvelle, J.).... 13

*Clean Label Project Found. v. Now Health Group, Inc.*, No. 21-11 (JDB), 2021 U.S. Dist. LEXIS
12548 (D.D.C. July 6, 2021) ...................................................................................... 12

*Dist. of Columbia ex rel. Dulles Plumbing Gp., Inc. v. Selective Ins. Co. of Am.*, 495 F. Supp. 3d 1
(D.D.C. 2020) (Moss, J.) .......................................................................................... 3, 4

*Earth Island Inst. v. BlueTriton Brands*, No. 21-2659 (JEB), 2022 U.S. Dist. LEXIS 15168 (D.D.C.
Jan. 27, 2022). ............................................................................................................ 7

*Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073 (D.D.C.
Feb. 18, 2020) .......................................................................................................... 2, 9

*Food & Water Watch, Inc. v. Tyson Foods, Inc.,* No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS
38232 (D.D.C. Mar. 5, 2020) ....................................................................................... 6

*Gibson v. Bartlett Dairy Inc.*, No. 20-CV-2848 (NGG), 2022 U.S. Dist. LEXIS 45776 (E.D.N.Y
Mar. 14, 2022). ........................................................................................................ 11

*Hackman v. One Brands, LLC*, No. 18-2101 (CKK), 2019 U.S. Dist. LEXIS 55635 (D.D.C. Apr.
1, 2019) ............................................................................................................... 15, 16

*In re Exxon Mobil Corp.*, No. 21- 8001, 2021 U.S. App. LEXIS 12320 (D.C. Cir. Apr. 23, 2021)
.................................................................................................................................. 16

*Inst. for Truth in Mktg v. Total Health Network Corp.,* 321 F. Supp. 3d 76 (D.D.C. 2018) (Jackson,
J.) ............................................................................................................................... 9

*Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175 (D.D.C. 2003) (Urbina, J.) ................ 17

*Lightfoot v. Dist. of Columbia*, Civil Action No. 01-1484 (CKK), 2006 U.S. Dist. LEXIS 4633
(D.D.C. Jan. 24, 2006) .............................................................................................. 18

*Martin v. Franklin Cap. Corp.*, 546 U.S. 132 (2005) ............................................................. 18

*Milani Constr., LLC v. Creative Concepts Grp., Inc.*, No. 19-3669 (TJK), 2020 U.S. Dist. LEXIS
20214 (D.D.C. Feb. 6, 2020) ..................................................................................... 17

*Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64 (D.D.C. 2014) (Lamberth, J.)
....................................................................................................................... 5, 7, 14, 18

*Nat'l Consumers League v. Flowers Bakeries, LLC*, 36 F. Supp. 3d 26 (D.D.C. 2014) .............. 14

*Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132 (D.D.C. 2010) (Kennedy, J.).. 5

*Nat'l Welfare Rts. Org. v. Weinberger*, 377 F. Supp. 861 (D.D.C. 1974) ................................... 6

*Organic Consumers Ass'n v. R.C. Bigelow, Inc.,* 314 F. Supp. 3d 344 (D.D.C. 2018) ............. 2, 6

*Organic Consumers Ass'n v. Handsome Brook Farm Grp. 2, LLC,* 222 F. Supp. 3d 74 (D.D.C.
2016) (Cooper, J.) ...................................................................................................... 7

*Organic Consumers Ass'n v. Smithfield Foods, Inc.*, No. 2020 CA 2566 B (FYP), 2020 D.C. Super.
LEXIS 28 (Dec. 14, 2020) ................................................................................... 12, 13

*Rotunda v. Marriott International, Inc*., 123 A.3d 980 (D.C. 2015) ........................................... 15

*Smith v. Abbott Labs., Inc.*, No. 16-501 (RJL), 2017 U.S. Dist. LEXIS 135478 (D.D.C. Mar. 31,
2017) ....................................................................................................................... 16

*Snyder v. Harris*, 394 U.S. 332 (1969) ...................................................................... 3, 5

*Song v. Charter Commc'ns Inc.*, Civ. No. 17-325, 2017 WL 1149286 (S.D. Cal. Mar. 28, 2017) ............................................................................................................................................... 15

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646 (7th Cir. 2006) .......................... 6

*Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40 (D.D.C. 2020) ........................... passim

*Urquhart v. Nwaneri*, No. 19-1990 (CKK), 2019 U.S. Dist. LEXIS 91960 (D.D.C. June 3, 2019) ............................................................................................................................................... 17

*Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150 (D.D.C. 2007) (Kessler, J.) ..................... 10

*Williams v. Purdue Pharma Co.*, No. 02-0556 (RMC), 2003 U.S. Dist. LEXIS 19268 (D.D.C. Feb. 27, 2003) ................................................................................................................................. 6

*Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665 (D.D.C. Apr. 18, 2006) ....................................................................................................... 7

*Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293 (D.D.C. 2013) ................................... 6

**Statutes**

28 U.S.C. § 1332(a) ...................................................................................................................... 3, 4

Class Action Fairness Act ("CAFA") ..................................................................................... passim

D.C. Code § 28-3901(a)(14) ........................................................................................................... 17

D.C. Code § 28-3901(c) .................................................................................................................... 8

D.C. Code § 28-3905(k)(1)(D) .............................................................................................. 1, 4, 14

D.C. Code § 3901(a)(15) ................................................................................................................... 4

D.C. Consumer Protection Procedures Act ("CPPA") ................................................. 4, 9, 11, 13

Plaintiff International Labor Rights Forum d/b/a Global Labor Justice-International Labor Rights Forum ("GLJ-ILRF," "ILRF," or "Plaintiff") respectfully submits this Reply to Defendant's Opposition to Plaintiff's Motion to Remand ("Opp.").

## **INTRODUCTION**

Defendant Bumble Bee Foods, LLC ("Bumble Bee" or "Defendant") argues that this case should remain in federal court by rehashing arguments that have been unanimously rejected by the judges of this District—including by this Court. *See Toxin Free USA v. J.M. Smucker Co.*, No. 20-cv-1013 (DLF), 507 F. Supp. 3d 40, 46 (D.D.C. Nov. 30, 2020).

This is a case regarding deceptive advertising under the D.C. Consumer Protection Procedures Act ("CPPA"). Under that statute, Plaintiff ILRF, a D.C. Code § 28-3901(a)(15) public-interest organization, brings this case as a private-attorney-general on behalf of itself and the general public of the District of Columbia pursuant to D.C. Code § 28-3905(k). (Complaint "Compl." ¶¶ 2, 14.) Plaintiff alleges that Defendant represents that it "advocat[es] for fishers and that it is committed to a 'fair and safe supply chain'" despite "a long history of engaging in and/or allowing unfair and dangerous labor practices in the commercial fishing of the seafood that ends up in Bumble Bee Products" (*id*. ¶¶ 7-8.) The Complaint states one count, for violation of the CPPA (*id*. ¶¶ 74-79), and seeks no damages or restitution, only declaratory and injunctive relief to stop the conduct directed at consumers in the District of Columbia (*id.* at Prayer for Relief).

Defendant opposes Plaintiff's Motion to Remand, first by arguing that the requisite amount in controversy of $75,000 exists to establish diversity jurisdiction because the non-aggregation principle does not apply, or in the alternative, that such a small number of consumers have seen Bumble Bee's deceptive advertising that it can meet the jurisdictional threshold regardless of the principle. Defendant's argument regarding the non-aggregation principle runs afoul of the

uncontroverted law in this District regarding how to determine the amount in controversy of CPPA actions, such as this one, that seek only injunctive and declaratory relief. Courts of this District, when faced with the question, have uniformly held that the non-aggregation principle applies, and that a defendant seeking to remove a CPPA action for declaratory and injunctive relief must show that the cost of compliance with the requested injunction would meet or exceed the jurisdictional threshold of $75,000 per member of the affected group. *See, e.g., Organic Consumers Ass'n v. R.C. Bigelow, Inc.*, 314 F. Supp. 3d 344, 351 (D.D.C. 2018) (Walton, J.) ("the overwhelming weight of authority within th[is] District indicates that defendants seeking to remove [CPPA] actions cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy, as that would violate the non-aggregation principle set forth by the Supreme Court.") (citations omitted).

And, despite Defendant's attempts to speculate that only a handful of consumers have seen its deceptive advertising, Plaintiff's Complaint, as well as this District's broad interpretation of standing under the CPPA, make it clear that in this case, the affected group is the general public of the District of Columbia. Defendant fails to show that its costs of compliance, inflated though they are, would meet the jurisdictional threshold when divided by this population. Further, Defendant's suggested measures of complying with Plaintiff's narrowly requested relief are patently unreasonable and excessive and thus cannot carry its burden of establishing costs of compliance. *See, e.g., Fahey v. Godiva Chocolatier, Inc.*, No. 19-2128 (JDB), 2020 U.S. Dist. LEXIS 27073, at *10-11 (D.D.C. Feb. 18, 2020) (granting remand where defendant's estimated cost-of-compliance was "speculative and unreasonable").

Second, Defendant argues that if it cannot establish diversity jurisdiction (which, as demonstrated, it cannot) that this Court has jurisdiction under the Class Action Fairness Act

("CAFA"). This argument is again unsupportable based on relevant precedent. This Court has established, time and time again, that private attorney general suits seeking only declaratory and injunctive relief under the CPPA *are not* entitled to jurisdiction under CAFA. *See e.g.*, *J.M. Smucker Co.*, 507 F. Supp. 3d at 45; *infra* § II. Finally, due to the amount of uncontradicted case law which rejects Defendant's arguments, this removal was objectively unreasonable and serves only to prolong this litigation and ramp up the non-profit Plaintiff's expenses. As such, Plaintiff is requesting attorneys' fees in connection with its remand motion.

## ARGUMENT

I.      **This Court Does Not Have Diversity or CAFA Jurisdiction Over This Action.**

Bumble Bee attempts to oppose Plaintiff's Motion to Remand by arguing that diversity jurisdiction exists over this action, or in the alternative, that jurisdiction exists under CAFA (*e.g.*, Opp. at 6-7.) Neither alternative establishes federal jurisdiction. ***First***, federal diversity jurisdiction requires (1) complete diversity between the plaintiff and the defendant; and (2) that "the matter in controversy exceeds the sum or value of $75,000." *Dist. of Columbia ex rel. Dulles Plumbing Gp., Inc. v. Selective Ins. Co. of Am.*, 495 F. Supp. 3d 1, 5 (D.D.C. 2020) (Moss, J.); 28 U.S.C. § 1332(a). While the parties in this action are completely diverse, the amount in controversy requirement cannot be met. According to long-standing, uniform precedent in this District, when a CPPA suit on behalf of the general public seeks only declaratory and injunctive relief, the cost of compliance must be calculated on a per-affected-individual basis, according to the non-aggregation principle of *Snyder v. Harris*, 394 U.S. 332, 335 (1969). Bumble Bee's attempts to argue that either the non-aggregation principle doesn't apply (despite this District's well-settled precedent that it does) or that the number of affected consumers is so small, and Bumble Bee's costs of compliance so high, that it would still meet the jurisdictional minimum, are unavailing and based on pure speculation. Because this requisite jurisdictional minimum has not been met, this Court does not have diversity

jurisdiction over ILRF's action. **Second**, Bumble Bee's argument that CAFA jurisdiction applies ignores the fact that this is a private attorney general representative action **not** a class action and that every single court that has heard Defendant's argument for CAFA jurisdiction in the context of a CPPA private attorney general action such as this has rejected it. Thus, Defendant's CAFA arguments are also unable to provide grounds for a removal of this action.

> ### A.   The Applicable Law Uniformly Holds That CPPA Cases of This Kind Are Subject to the Non-Aggregation Principle.

As aforementioned, Plaintiff is a D.C. Code § 3901(a)(15) public-interest organization and brings this CPPA action on behalf of consumers and the general public pursuant to D.C. Code § 28-3905(k)(1)(D). (Compl. ¶¶ 2, 14.) Plaintiff seeks only injunctive and declaratory relief (*id*. Prayer.) Defendant removes this action based on diversity jurisdiction (Notice of Removal ¶¶ 8-24), however, such a basis does not actually exist for this case. (Plaintiff's Memorandum in Support of Remand "Remand Mem." at 3-10.)

In CPPA actions brought by nonprofit, public-interest organizations, seeking only injunctive relief, D.C. Courts have uniformly granted remand. The applicable law in D.C. is so established at this point, that even Defendant had to acknowledge this fact and ask the Court to reverse **over a decade** of uniform precedent[1]—including its own. *See* Remand Mem. at 4-5.[2]

Federal diversity jurisdiction requires (1) complete diversity between the plaintiff and the defendant; and (2) that "the matter in controversy exceeds the sum or value of $75,000." *Dist. of Columbia ex rel. Dulles Plumbing Grp.*, 495 F. Supp. 3d at 5; 28 U.S.C. § 1332(a). While the Parties in this action are completely diverse, the amount in controversy requirement cannot be met,

---

[1] *See* Opp. at 9 ("Although courts in this District have employed the non-aggregation principle in CPPA cases, Bumble Bee respectfully asks this Court to depart from those non-binding Decisions. . . .").

[2] Ironically, Defendant cites to many of these cases in its argument, despite the fact that these cases support Plaintiff's proposition. In fact, many involve a similar fact pattern of a nonprofit, public-interest group bringing a CPPA claim on behalf of the general public of D.C.

since in this case, which involves a CPPA action brought by a nonprofit, public-interest organization Plaintiff, the cost of compliance must be calculated on a per-affected-individual basis, according to the non-aggregation principle of *Snyder,* 394 U.S. at 335. Defendant, despite its attempt to rewrite the law of the District, cannot meet this jurisdictional minimum. *See Animal Legal Def. Fund v. Hormel Foods Corp.,* 249 F. Supp. 3d 53, 62 (D.D.C. 2017) (Kollar-Kotelly, J.) (CPPA action brought by a nonprofit, public-interest organization plaintiff) (citing *Nat'l Consumers League v. Bimbo Bakeries USA*, 46 F. Supp. 3d 64, 73 (D.D.C. 2014) (Lamberth, J.) (CPPA action brought by a nonprofit, public-interest organization plaintiff)); *see also, e.g., Beyond Pesticides v. Exxon Mobil Corp.,* No. 20-cv-1815 (TJK), 2021 U.S. Dist. LEXIS 53032, at *5 (D.D.C. Mar. 22, 2021); (CPPA action brought by a nonprofit, public-interest organization plaintiff); and *Nat'l Consumers League v. Gen. Mills, Inc.*, 680 F. Supp. 2d 132, 141 (D.D.C. 2010) (Kennedy, J.) (CPPA action brought by a nonprofit, public-interest organization plaintiff). Despite Defendant's assertion to the contrary, this case is brought on behalf of "the general public of the District of Columbia" (Compl. ¶ 15), not an estimated 17 consumers (Opp. at 1.).

Despite the established precedent, Defendant categorizes this case as involving "two or more plaintiffs" uniting "to enforce a single title or right in which they have a common and undivided interest" (opp. at 10, quoting *Snyder*, 394 U.S. at 335). This argument, however, has been roundly rejected, including by this Court in *Toxin Free USA v. J.M. Smucker Co.*:

> The sole exception to the nonaggregation principle is when 'two or more plaintiffs unite to enforce a single title or right in which they have a common and undivided interest.' *Snyder*, 394 U.S. at 335. But [plaintiff] does not seek any integrated claim for relief—like disgorgement of the defendants' profits—that would hold defendants generally liable for a fixed amount in which the members of the general public in Washington, D.C. would have a common and undivided interest. ***Consequently, the defendants' compliance costs cannot be aggregated to satisfy the amount in controversy requirement.***

507 F. Supp. 3d at 46 (emphasis added).

Defendant also argues that "Bumble Bee has no interest in how the injunctive relief will be distributed among class members" (Opp. at 10), as a reason for the Court to make an inconsistent ruling in this case. But Defendant's authorities for that argument are not relevant to the matter at hand. For example, this case is not a class action (Compl. ¶ 16), yet Defendant relies on cases involving putative class actions. *See Williams v. Purdue Pharma Co.*, No. 02-0556 (RMC), 2003 U.S. Dist. LEXIS 19268 (D.D.C. Feb. 27, 2003) (putative class action of individual consumers seeking damages arising from purchase or receipt of pain medication); and *Nat'l Welfare Rts. Org. v. Weinberger*, 377 F. Supp. 861 (D.D.C. 1974) (over defendant's objection, finding federal jurisdiction where plaintiff organization filed putative class action seeking to rescind Department of Health, Education and Welfare (HEW) and reallocate federal matching funds). Defendant's authorities, like *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 652 (7th Cir. 2006), have previously been rejected by courts of this District for being irrelevant, out-of-circuit citations. *See Food & Water Watch, Inc. v. Tyson Foods, Inc.,* No. 19-cv-2811 (APM), 2020 U.S. Dist. LEXIS 38232, at *11-12 (D.D.C. Mar. 5, 2020).

Defendant also states that "[t]he non-aggregation principle also has no logical application to attorneys' fees where, as here, ILRF is the sole plaintiff in the case and no one other than ILRF and its counsel stand to benefit from an attorneys' fees award" (Opp. at 10.)[3] First, courts in this District have simply set attorneys' fees at $0 when a private attorney general sues for a CPPA injunction without damages as is the case here.[4] *See Organic Consumers Ass'n v. Handsome Brook*

---

[3] Defendant claims that *Zuckman v. Monster Beverage Corp.*, 958 F. Supp. 2d 293, 301 (D.D.C. 2013) is "inapplicable" (opp. at 11.) But even with this argument, Defendant relies on cases, such as *R.C. Bigelow, Inc.*, which have found that in analogous CPPA actions that defendant cannot "show that the amount in controversy exceeds $75,000," thus "the Court conclude[d] that it does not have diversity jurisdiction over this case." 314 F Supp 3d at 354-355.

[4] Defendant argues that "attorneys' fees 'may be counted towards establishing a jurisdictional amount when they are provided for by statute in controversy,'" (opp. at 9, quoting *Parker-Williams v. Charles Tini & Assocs., Inc.*, 53 F. Supp. 3d 149, 153 (D.D.C. 2014)), but courts of this District have already distinguished *Parker-Williams* from cases

*Farm Grp. 2, LLC,* 222 F. Supp. 3d 74, 78-79 (D.D.C. 2016) (Cooper, J.) (citations omitted) (quoting *Bimbo Bakeries USA*, 46 F. Supp. 3d at 73). Second, even if attorneys' fees were counted, indivisibly, toward the jurisdictional minimum, and were permitted to be aggregated, Defendant has not shown what those attorneys' fees would amount to and courts in this district have ruled that speculation of attorneys' fees is inappropriate here. *See e.g., Beyond Pesticides,* 2021 U.S. Dist. LEXIS 53032, at *5 n.1*; Animal Legal Def. Fund,* 249 F. Supp. 3d at 63; *Bimbo Bakeries USA*, 46 F. Supp. 3d at 74*; Your Girl Friday, LLC v. MGF Holdings, Inc.*, No. 06-0385 (ESH), 2006 U.S. Dist. LEXIS 20665, at *8 (D.D.C. Apr. 18, 2006); *see also* Remand Mem. at 7.

In sum, the precedent for remand in CPPA actions brought by nonprofit, public-interest organizations seeking only injunctive relief is clear. Despite Defendant's arguments to the contrary, this Court has already recognized that "Courts in this district have consistently held that defendants removing DCCPPA actions 'cannot rely on the total cost of compliance with the plaintiff's requested injunction to establish the amount-in-controversy' requirement. . . .'" because "allowing defendants to rely on the total cost of compliance would violate the nonaggregation principle. . . ." and "[t]he Court sees no reason to depart from the consensus of courts in this district." *J.M. Smucker Co.*, 507 F. Supp. 3d at 45-46 (internal citations omitted).

### B.    Bumble Bee's Costs of Compliance Are Speculative and Inflated.

Defendant's speculative cost of compliance estimates ignore the relief that was actually requested in Plaintiff's Complaint and instead are based on the most onerous, broad, and unnecessary steps that Defendant could possibly take to comply. These speculative and inflated

---

similar to Plaintiff's. *See Earth Island Inst. v. BlueTriton Brands*, No. 21-2659 (JEB), 2022 U.S. Dist. LEXIS 15168 at *12-13 (D.D.C. Jan. 27, 2022).

estimates are unreasonable and do not support Defendant's attempt to remove this case from Plaintiff's chosen forum, the District of Columbia Superior Court.

The reach of the CPPA is limited to the District of Columbia. *See* D.C. Code § 28-3901(c) ("This chapter establishes an enforceable right to truthful information from merchants about consumer goods and services that are or would be purchased, leased, or received in the District of Columbia.") Accordingly, any injunction of Bumble Bee's marketing, or other relief, would be required only as to services offered in the District, and only that marketing which is found to be in violation of the CPPA. The relief sought in Plaintiff's Complaint in this matter is only as follows:

    A.  a declaration that Bumble Bee's conduct is in violation of the DC CPPA;

    B.  an order enjoining Bumble Bee's conduct found to be in violation of the DC CPPA;

    C.  an order granting Plaintiff costs and disbursements, including reasonable attorneys' fees and expert fees, and prejudgment interest at the maximum rate allowable by law.

(Compl., at Prayer for Relief).

Nonetheless, despite this clearly limited requested relief, Defendant argues that to comply, it would need to undertake (at least) the following extensive measures:

- "revise its corporate marketing and messaging on sustainability-related efforts dating back to 2020";
- "explain in its in its Seafood Future Report and sustainability-related social media posts why its supply chain purportedly 'falls short of international laws and standards regarding fair labor practices and 'employs fishing methods that are inherently dangerous for workers'";
- "recall[] existing corporate reports, websites, and social media posts";
- "replac[e] such reports that have not yet been published; researching and developing additional disclosures; undertaking consumer marketing research in connection with any new advertising campaigns; and redesigning its websites and sustainability-related materials";
- "reconfigur[e] the content on Bumble Bee's 'Impact' website";
- "reconsider its sustainability framework and values."

(Opp. at 12-13).

It is no wonder that Bumble Bee estimates that such measures would cost it over $1 million. It *is* a wonder, however, that Bumble Bee claims that these sweeping measures are required under Plaintiff's narrowly requested relief. For example, Plaintiff's request to enjoin Defendant's conduct found to be in violation of the CPPA would only require Bumble Bee to remove the challenged statements from one portion of its website, not to "reconfigure[e] the content" on the whole website nor "explain . . . how its supply chain [] falls short of international laws." And while Plaintiff would applaud Bumble Bee for "reconsider[ing] its sustainability framework and values," nowhere in its Complaint has it requested such an action, nor could it under the relief available in a CPPA action.

Measuring the cost-of-compliance metric for determining the amount-in-controversy in cases seeking injunctive relief puts the burden of "establishing the reasonableness" of the estimate on the party seeking removal. *Fahey*, 2020 U.S. Dist. LEXIS 27073, at *10-11 (granting remand where defendant's estimated cost-of-compliance was "speculative and unreasonable"). As demonstrated above, Bumble Bee has failed to meet this burden, offering inflated and unreasonable estimates for its costs of compliance. The Declarations submitted by Bumble Bee's Manager of Corporate Communications Erin Wilson (Dkt. No. 13-1) and Senior Vice President of Strategy & Commercialization Connie Shepard (Dkt. No. 13-2) only echo the conjectures Bumble Bee makes throughout its Opposition. For example, Connie Shepard's Declaration admits that over 1,000 followers viewed one of the social media posts at issue and that "Bumble Bee is not able at present to break down that figure by location." (Dkt. No. 13-2, ¶ 9). Nonetheless, the Declaration goes on to "suggest[]" that only 4 followers from the District of Columbia viewed that post. Such speculation cannot carry Bumble Bee's burden. *See, e.g.*, *Inst. for Truth in Mktg v. Total Health Network Corp.,* 321 F. Supp. 3d 76, 89 (D.D.C. 2018) (Jackson, J.) ("It is well established that a

defendant may not rely on sheer speculation to satisfy its burden of showing the amount in controversy." (citing *Wexler v. United Air Lines, Inc.*, 496 F. Supp. 2d 150, 154 (D.D.C. 2007) (Kessler, J.))).

Bumble Bee's related argument that the value of attorneys' fees in this action would also exceed the jurisdictional minimum of $75,000 are based not only on further speculative estimates, but also on a mistake of law. As Plaintiff has demonstrated with ample precedent, in a CPPA action such as this seeking only injunctive and declaratory relief, attorneys' fees are either subject to the non-aggregation principle or set at $0 for determining the amount in controversy. (*See* Remand Mem. at 5-7). Even disregarding this settled principle, Bumble Bee's estimates of attorneys' fees in this action lack a reasonable basis. Defendant seeks to analogize from an earlier litigation done by Plaintiff's counsel by "***assuming*** a similar trajectory for this case" (opp. at 14.) But an assumption is "something that you accept as true ***without . . . proof***."[5] And indeed, Defendant offers no proof that the trajectory of this litigation is in any way similar to that in a different litigation, involving a different client and different claims. Defendant's speculative assumptions are unable to establish its burden. *See, e.g.*, *Beyond Pesticides*, 2021 U.S. Dist. LEXIS 53032, at *5 n.1 ("Even if the non-aggregation principle did not apply, Exxon Mobil's bald claim that, at lead counsel's $700-an-hour rate, 'the amount in controversy will exceed $75,000 so long as [lead counsel] alone bills just 110 hours to this complex litigation,' is too speculative to meet its burden.") (internal citations omitted).

### C.    Defendant's Speculations Cannot Establish the Jurisdictional Minimum.

Bumble Bee argues that the value of Plaintiff's requested relief would still exceed $75,000 per affected consumer if the non-aggregation principle applies (as it must) because it assumes an

---

[5] *See* "Assumption," Cambridge Dictionary, https://dictionary.cambridge.org/dictionary/english/assumption (last visited July 20, 2022).

erroneously small number of affected D.C. consumers (opp. at 15-16.) This argument is both unreasonably speculative and disregards the relevant legal standard. Defendant's assertion that only 17 D.C. consumers viewed the statements at issue is based on pure, unsubstantiated guesswork. And Bumble Bee's methodology neglects to account for the fact that courts throughout this District have interpreted standing under the CPPA broadly to encompass both consumers who have been misled as well as those who may be misled in the future. Both points evidence that Bumble Bee's 17-consumer count is without foundation and cannot substantiate the amount in controversy that would be required for the removal of this action.

*First*, Defendant's claim that the number of consumers who viewed the statements is "trivially small . . . [and] stands entirely unrebutted" (opp. at 15) neglects the fact that Plaintiff *has* credibly rebutted this claim. For example, in its Motion to Remand, Plaintiff noted that Defendant's reliance on IP addresses for its estimates ignores the likelihood that "consumers in the District (for example, commuters) may very well have viewed its websites outside of the District." (Remand Mem. at 10). Indeed, according to D.C.'s Office of Revenue Analysis only around *30%* of the District's workforce of approximately 800,000 actually live in D.C.[6] (and thus would have D.C. IP addresses). This means that there are potentially over 500,000 people who may work and shop in the District, while looking at Bumble Bee's website from their homes in other locations. Further, D.C. is a tourist and work-travel hub, meaning that even more potential D.C. consumers would not necessarily be D.C. residents. In an analogous situation, in *Gibson v. Bartlett Dairy Inc.*, the defendant tried to establish that at least two thirds of the proposed class were citizens of New York state to invoke CAFA's home state exception; the court found the calculations could not stand "given the net effects of commuting, tourism, border-community

---

[6] Rachel Sadon, *About 800,000 People Work in D.C., But Who Actually Lives Here?*, dcist (Aug. 24, 2016), https://dcist.com/story/16/08/24/who-lives-and-works-in-dc/.

shopping, and business travel . . ." No. 20-CV-2848 (NGG), 2022 U.S. Dist. LEXIS 45776, at *11 (E.D.N.Y Mar. 14, 2022). Similarly, Defendant's attempts to base its consumer count on IP addresses ignores the reality that many D.C. consumers may not reside in D.C. And, even more fatal for its "evidence," is Bumble Bee's own acknowledgement that many of its numbers are pure conjecture. For example, Defendant admits that for the Seafood Future Report, which Plaintiff cites to frequently, Bumble Bee "is not currently able to break down [the number of viewers] figure by location" (opp. at 6 n. 6.) Instead, Defendant tries to piece together potential percentages that have no basis in actual data. Unfortunately for Bumble Bee, guessing games are not enough to meet the evidentiary standard required for establishing the amount in controversy. *See Clean Label Project Found. v. Now Health Group, Inc.*, No. 21-11 (JDB), 2021 U.S. Dist. LEXIS 125488, at *8 (D.D.C. July 6, 2021) ("the Court will only consider values supported by evidence in the record and will not count claimed amounts based solely on unsupported assertions or speculation").

**Second,** Defendant's argument that the "value of a claim for purposes of diversity jurisdiction is assessed at the time of removal" (opp. at 16) fails to account for the breadth of standing that is established under the CPPA. The statute is designed to protect both consumers who, at this moment, are being deceived and those who could, in the future, be deceived. *See, e.g.*, *Organic Consumers Ass'n v. Smithfield Foods, Inc.*, No. 2020 CA 2566 B (FYP), 2020 D.C. Super. LEXIS 28, at *11 (Dec. 14, 2020) (stating that the CPPA confers broad standing on "consumers who have been ***or will be deceived by*** . . . alleged deceptive marketing and advertising" (emphasis added)). And Defendant's argument neglects to recognize that this is a representative action brought by ILRF "***on behalf of the general public***" (compl. *Preamble*) not on behalf of the fictionally small number of District IP Addresses that Defendant claims make up the whole universe of potentially deceived D.C. consumers. The value of Plaintiff's claim, therefore, is not

limited to the consumers who have already been harmed but also to the general public inclusive of those who may be harmed in the future if Defendant's deception continues. This is also evidenced by the fact that courts have routinely held that the amount in controversy in CPPA actions is supposed to be divided not just by presently affected consumers but by the statute's **_intended beneficiaries:_**

> Defendants respond that, because "this is a single-plaintiff action, not a class action or other multi-claimant lawsuit," there is "no basis for the Court to 'disaggregate'" the costs of compliance among the beneficiaries. Plaintiff has the better argument. . . . [A]lthough the Court spoke in terms of "plaintiffs" in _Snyder_ and _Zahn_, the rationale extends equally to **_actions brought by nonprofit groups where the beneficiaries need not be added as parties to the lawsuit._**

_Breathe DC v. Santa Fe Nat. Tobacco Co._, 232 F. Supp. 3d 163, 170-171 (D.D.C. 2017) (Huvelle, J.) (internal citations omitted) (emphasis added).

Defendant also misreads the discussion of CPPA standing in _Animal Legal Def. Fund v. Hormel_ which, instead of limiting such standing as Defendant would argue, explicitly speaks about the ways in which the CPPA provision at issue was designed to "confer '**_maximum standing_**' to public interest organizations . . . beyond what would be afforded in a federal under a narrow reading of prior federal court decisions on federal standing." 258 A.3d 174, 184 (D.C. 2021) (internal citations omitted) (emphasis added). Under the unique standing provisions afforded by the CPPA, the value of Plaintiff's requested relief must include those consumers who "have been **_or will be_**" deceived by Defendant's misrepresentation. _Smithfield Foods, Inc.,_ 2020 D.C. Super. LEXIS 28, at *11.

## II. Courts in this District Have Uniformly and Routinely Rejected Defendant's CAFA Argument.

There is no reasonable argument to be made that private attorney general suits seeking only declaratory and injunctive relief under the CPPA are entitled to CAFA jurisdiction. In fact, this very same argument has been routinely and uniformly rejected by courts of this District. _See e.g.,_

*J.M. Smucker Co.*, 507 F. Supp. 3d at 45 ("Because Toxin Free did not bring this case as a class action under Rule 23, and the defendants have not shown that D.C. law requires treating it as such, CAFA does not confer federal jurisdiction."); *Animal Legal Def. Fund,* 249 F. Supp. 3d at 65 ("The Court need not resolve the parties' dispute on this issue [regarding the amount in controversy], however, because class action jurisdiction under CAFA is absent here for a much more fundamental reason: Plaintiff has not brought this case as a class action."); *Bimbo Bakeries USA,* 46 F. Supp. 3d at 76-77 ("Because of the conspicuous lack of class certification requirements in the statute, the precedent holding that private attorney general actions are not class actions, and the public policy reasons . . . the Court concludes that this case is not removable as a class action under CAFA.").

This is not a class action that Plaintiff is attempting to "disguise" as something else (opp. at 19), it is simply not a class action. Again, time after time courts in this District have rejected the very same argument that Bumble Bee is attempting to make in this case, finding that private attorney general actions seeking only injunctive and declaratory relief lack the critical hallmarks of Rule 23 class actions. In *Nat'l Consumers League v. Flowers Bakeries, LLC*, Judge Hoovel stated that:

> "Absent the 'hallmarks of Rule 23 class actions; namely, adequacy of representation, numerosity, commonality, typicality, or the requirement of class certification,' courts have held that private attorney general statutes 'lack the equivalency to Rule 23 that CAFA demands.' . . . The same is true of D.C. Code § 28-3905(k)(1)(D).

> The Court therefore sees no reason to depart from the well-reasoned conclusion of Judge Bates in *Breakman* and *Zuckman* that removal is not permitted under CAFA's class action provision for actions brought by a private attorney general under D.C. Code § 28-3905(k)(1) where plaintiff has not brought a 'class action' under D.C. Superior Court Rule 23."

36 F. Supp. 3d 26 at 36 (D.D.C. 2014).

This same reasoning was adopted again in *Hackman v. One Brands, LLC*, No. 18-2101 (CKK), 2019 U.S. Dist. LEXIS 55635, at *8 (D.D.C. Apr. 1, 2019) by Judge Kollar-Kotelly, who noted that "[t]he *National Consumers League* court explained that the plaintiff had brought a case under the DCCPPA and had not brought a "class action" under D.C. Superior Court Rule 23. As such, removal of the case as a class action under CAFA was not permissible." *Id.* at *8. Defendant's only response to these holdings is that "[t]hat position is not correct" (opp. at 20.) While Defendant may wish the law were different than it is, it offers no plausible grounds for its desired departure from settled precedent.[7]

Instead, Defendant tries to utilize *Rotunda v. Marriott International, Inc*., 123 A.3d 980 (D.C. 2015) to argue that "Superior Court Rule 23 applies to representative suits under the CPPA" (Opp. at 20). As Defendant admits however, *Rotunda* was a case involving money damages and rather than its holding "apply[ing] with equal force to a CPPA claim for injunctive relief" (*id*.) this very same misreading of *Rotunda* has been uniformly rejected.  The *Rotunda* decision is limited to collective actions seeking damages and has been specifically held inapplicable to an action not seeking monetary damages. *See, e.g.*, *J.M. Smucker Co.*, 507 F. Supp. 3d at 45 ("the *Rotunda* court's concern—that not requiring compliance with *Rule 23* would preclude members of the public from asserting their own claims for damages, *see Rotunda*, 123 A.3d at 986—does not apply here . . . because Toxin Free seeks injunctive relief and not damages on behalf of the general

---

[7] Defendant offers examples of "disguised" class actions such as *Song v. Charter Commc'ns Inc*., Civ. No. 17-325, 2017 WL 1149286, at *1 n.1 (S.D. Cal. Mar. 28, 2017) and *Addison Automatics, Inc. v. Hartford Cas. Ins. Co*., 731 F.3d 740, 742 (7th Cir. 2013) where the courts found CAFA jurisdiction to apply. Neither of these cases, however, are private attorney general actions seeking only declaratory and injunctive relief and they contain the traditional markers of a class action that courts have found determinative in ascribing CAFA jurisdiction. In fact, the Court in *Addison Automatics* itself distinguished these "disguised" class action type cases from private attorney general actions under different statutes where it found that CAFA would ***not*** apply. *See Addison Automatics,* 731 F.3d 740, 744 ("The question in *LG Display* was whether a *parens patriae* antitrust action by Illinois against manufacturers of LCD panels was removable under CAFA. We held that CAFA did not apply because class actions 'must be brought under Rule 23 or the state equivalent,' and a *parens patriae* action brought by a state government is a different sort of proceeding that does not qualify").

public" (internal citation omitted); *Hackman*, 2019 U.S. Dist. LEXIS 55635 at *8-10 (holding that *Rotunda* is inapplicable where "Plaintiff seeks only injunctive relief on behalf of members of the general public"); *Smith v. Abbott Labs., Inc.*, No. 16-501 (RJL), 2017 U.S. Dist. LEXIS 135478, at *4-5 (D.D.C. Mar. 31, 2017) (limiting *Rotunda* "solely to suits for money damages"). Thus, *Rotunda* does not disturb the court's numerous prior holdings that CAFA jurisdiction does not apply to CPPA private-attorney-general actions for injunctive relief.

And Defendant is again mistaken in claiming that "[t]he only case ILRF cites denying CAFA jurisdiction after Rotunda in a section 28- 3905(k)(1)(D) case is *Toxin Free USA v. J.M. Smucker Co.*, 507 F. Supp. 3d 40 (D.D.C. 2020)" (opp. at 22) (a decision authored by this Court, incidentally). In fact, Plaintiff also cites a case where Bumble Bee's own counsel had attempted (and failed) to bring this very same argument before. (Plaintiff's Motion to Remand at 15). In *In re Exxon Mobil Corp.*, the petitioner sought review as an add-on to its argument about CAFA jurisdiction, arguing, like Bumble Bee has, that "[t]he question of how to calculate the amount in controversy in cases seeking injunctive relief under Section 28-3905(k)(1) is also an open, important, and recurring question in this circuit." Reply Brief for Petitioner at 8, *In re Exxon Mobil Corp.*, No. 21-800, Doc. No. 1895162 (D.C. Cir. Apr. 19, 2021). Instead of finding this to be an "open" question, the Circuit Court denied review, finding that "the District of Columbia courts should determine" whether CPPA actions of this kind must be litigated as class actions. *In re Exxon Mobil Corp.*, No. 21- 8001, 2021 U.S. App. LEXIS 12320, at *1-2 (D.C. Cir. Apr. 23, 2021). And Plaintiff is not claiming that this denial of review is a "decision on the merits" (Opp. at 23) but rather that it evidences the fact that the D.C. Circuit has viewed this question to be one that is properly for the D.C. courts to decide. Since the *In re Exxon Mobil* decision, no D.C. court has declared that nonprofit CPPA actions for injunctive relief must be litigated as class actions;

therefore, the Circuit Court's holding that such a requirement not be imposed by the federal courts must stand.

### III.    Plaintiff Is Entitled to Attorneys' Fees and Costs in Connection With Its Remand Motion.

GLJ-ILRF, a non-profit public interest organization pursuant to D.C. Code § 28-3901(a)(14)-(15), has requested attorneys' fees on the basis that this case is no different from at least a dozen prior remands of CPPA representative cases seeking only injunctive and declaratory relief. Given the state of the law in this district regarding non-aggregation of relief, the need for an evidentiary basis for costs of compliance estimates, pro rata or $0 apportionment of attorneys' fees, and the inapplicability of CAFA jurisdiction in CPPA representative actions, Bumble Bee's removal had no chance of success, and the removal could only have been to put the less powerful litigant at a disadvantage. Costs and fees are regularly imposed where "the removing party contradicts well-settled law in attempting to remove the case to federal court." *Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 181 (D.D.C. 2003) (Urbina, J.).

As Plaintiff has shown, an objectively reasonable ground for removal of this action is non-existent, and a fee award is warranted. *See, e.g.*, *Urquhart v. Nwaneri*, No. 19-1990 (CKK), 2019 U.S. Dist. LEXIS 91960, at *9 (D.D.C. June 3, 2019) (awarding fees where removal was neither "logical" nor supported by applicable precedent). GLJ-ILRF further submits that, given the uncontradicted[8] and unwavering law within this District, Bumble Bee's removal could only have been for the purpose of delaying the action or forcing the not-for-profit plaintiff to expend scarce resources. *Cf. Milani Constr., LLC v. Creative Concepts Grp., Inc.*, No. 19-3669 (TJK), 2020 U.S. Dist. LEXIS 20214, at *2 (D.D.C. Feb. 6, 2020) (awarding costs where removal was "dilatory

---

[8] Plaintiff is unaware of a single decision from within this Circuit that used the total cost of compliance as the amount-in-controversy in a CPPA action seeking purely injunctive relief on behalf of the general public or applied CAFA jurisdiction to such an action. Bumble Bee has cited none.

maneuver" and removing party attempted to justify removal, against District precedent, with citation to cases from other jurisdictions); *Lightfoot v. Dist. of Columbia*, Civil Action No. 01-1484 (CKK), 2006 U.S. Dist. LEXIS 4633, at *34 (D.D.C. Jan. 24, 2006) ("[T]he Court further emphasizes Chief Justice Taft's maxim that 'Delay works always for the man with the longest purse'.").

Plaintiff does not make its request for fees and costs lightly. GLJ-ILRF is a public-interest organization seeking no monetary relief, only an end to misleading conduct directed at D.C. consumers. Bumble Bee has removed a straightforward consumer-deception claim from Plaintiff's chosen forum, D.C. Superior Court, which has the most experience handling CPPA actions. Bumble Bee's unfounded removal has forced not only expense upon GLJ-ILRF but also delay in an action that aims to end current conduct. These are, in the words of the Supreme Court, "unusual circumstances," *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141 (2005), which justify an award of fees even apart from the lack of any objectively reasonable basis for Bumble Bee's removal.

In such circumstances, Plaintiff submits to the Court's discretion that an award of fees and costs associated with this remand effort is warranted. *See Bimbo Bakeries USA*, 46 F. Supp. 3d at 77 (citing *Martin* for proposition that district courts retain discretion to determine the existence of unusual circumstances).

<u>**CONCLUSION**</u>

For all the foregoing reasons, nonprofit GLJ-ILRF respectfully requests that this action be remanded to its chosen forum, the Superior Court of the District of Columbia, and that the Court in its discretion award Plaintiff the costs and fees associated with these remand proceedings.

DATED: July 29, 2022

Respectfully submitted,

**RICHMAN LAW & POLICY**

*/s/ Kim E. Richman*
Kim E. Richman (Bar No. 1022978)
1 Bridge Street, Suite 83
Irvington, NY 10533
Telephone: (914) 693-2018
krichman@richmanlawpolicy.com

*Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Kim E. Richman, hereby certify that on July 29, 2022, I caused a true and correct copy

of the foregoing document to be served on counsel of record for Defendant in the above-captioned

Action via ECF:

**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**

Justin Anderson (D.C. Bar No. 1030572)
Jake E. Struebing (D.C. Bar No. 1673297)
2001 K Street, NW
Washington, DC 20006
Telephone: (202) 223-7300
janderson@paulweiss.com
jstruebing@paulweiss.com

William Michael (*pro hac vice*)
1285 Avenue of the Americas
New York, NY 10019
Telephone: (212) 373-3000
wmichael@paulweiss.com

*Attorneys for Defendant*

*/s/Kim E. Richman*
Kim E. Richman

19